1 | GEORGE D. YARON, ESQ. (State Bar #96246)
gyaron@yaronlaw.com
2 | D. DAVID STEELE, ESQ. (State Bar #171636)
dsteele@yaronlaw.com
3 | YARON & ASSOCIATES
1300 Clay Street, Suite 800
4 | Oakland, California 94612
Telephone: (415) 658-2929
5 | Facsimile: (415) 658-2930

6 | Attorneys for Defendant
PUGET SOUND COMMERCE
7 | CENTER, INC. (formerly known as
TODD SHIPYARDS CORPORATION)

8

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11

12 | MARCELLA JOHNSON, as Sucessor-in-     )     CASE NO. _____
Interest to and Wrongful Death Heir of    )
13 | RICHARD JOHNSON, Deceased and DEVIN   )     **NOTICE OF REMOVAL OF ACTION**
JOHNSON and TIFFANEY JOHNSON, as       )     **BY PUGET SOUND COMMERCE**
14 | Wrongful Death Heirs of RICHARD       )     **CENTER, INC., formerly known as**
JOHNSON, Deceased                         )     **TODD SHIPYARDS CORPORATION**
15 |                                        )     **UNDER 28 U.S.C. §1442(a)**
       Plaintiffs,                         )     **[FEDERAL OFFICER]**
16 |                                        )
    vs.                                     )
17 |                                        )
                                            )
18 | GEORGIA-PACIFIC LLC (FKA GEORGIA-     )
PACIFIC CORPORATION); ASSOCIATED        )
19 | INSULATION OF CALIFORNIA; PUGET      )
SOUND COMMERCE CENTER, INC. (FKA       )
20 | TODD SHIPYARDS CORPORATION); and      )
DOES 1-800, inclusive,                    )
21 |                                        )
                                            )
22 |       Defendants                       )
_____ )

23 |    TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

24 | DISTRICT OF CALIFORNIA:

25 |    PLEASE TAKE NOTICE that Defendant PUGET SOUND COMMERCE CENTER, INC.,

26 | formerly known as TODD SHIPYARDS CORPORATION (TODD"), hereby removes the

27 | above-entitled action from the Superior Court of the State of California, in and for the County of San

28 | Francisco, to this Court, pursuant to 28 U.S.C. §§1442(a)(1) and 1446, as described below.

---

Notice of Removal                          -1-                   G:\4949\Wrongful Death\Removal\Notice.Removal.Final.wpd

1    This is a civil action over which this Court has subject matter jurisdiction under 28 U.S.C.

2  §1331, as the action arises under the Constitution, laws, or treatises of the United States within the

3  meaning of 28 U.S.C. §1331 by virtue of Plaintiffs' attempt to adjudicate claims with respect to

4  persons acting under an officer of the United States pursuant to 28 U.S.C. §1442(a)(1).

5    The grounds for removal are as follows:

6    1.    On February 10, 2016, MARCELLA JOHNSON, as Successor-in- Interest to and

7  Wrongful Death Heir of RICHARD JOHNSON, Deceased,  and DEVIN JOHNSON and TIFFANEY

8  JOHNSON, as Wrongful Death Heirs of RICHARD JOHNSON, Deceased, ("Plaintiffs"), filed their

9  Complaint in the Superior Court of the State of California, in and for the County of San Francisco, ,

10  Case No. CGC- 15-276493, against TODD, and a number of other entities. A true and correct copy

11  of the Complaint is attached hereto as Exhibit A.  A true and correct copy of the Civil Case Cover

12  Sheet is attached hereto as Exhibit B.

13    2.    On or about February 22, 2016, the Summons, Instructions, Statement(s), Notice(s),

14  Complaint, Exhibit(s), Stipulation(s) and Attachments  were served on TODD.  A true and correct

15  copy of the Service of Process is attached hereto as Exhibit C.

16    3.    The Complaint for Damages alleges 6 causes of action: (1) Negligence I - Survival,

17  (2) Products Liability - Survival, (3) Negligence I - Wrongful Death, (4) Products Liability - Wrongful

18  Death, (5) Negligence II - Survival, and (6) Negligence II – Wrongful Death  against various entities,

19  including TODD. (See Exhibit A.)

20    4.    The Complaint contends that Decedent RICHARD JOHNSON ("Decedent") was

21  exposed to asbestos from 1962 - 1966,  while serving in the U.S. Navy as a Boiler Tender on a Navy

22  ship, and  at various shipyards, including TODD Seattle and TODD San Pedro.  Plaintiffs contend

23  Decedent was exposed to asbestos while working aboard the USS CARTER HALL (LSD-3), and

24  through home construction/remodeling projects.  (See Exhibit A of the Complaint.)

25    5.    Upon review of the Complaint, Plaintiffs are alleging negligence and products liability

26  causes of action against TODD.  Also, it appears that Plaintiffs allege products liability claims,

27  ostensibly, because asbestos-containing products were incorporated into the above-listed Navy vessel

28  constructed, repaired and overhauled by TODD and others.  Plaintiffs based their claims, in whole or

1    in part, on Decedent's alleged exposure to asbestos while working on the subject vessel. To the extent

2    that the design or manufacture of this vessel included asbestos-containing parts or components, such

3    inclusion was required by the United States government in the detailed and precise specifications

4    issued and approved, and under the direction of the Secretaries of the Department of Defense and the

5    U.S. Navy. Any decision regarding the inclusion of asbestos-containing parts or components on the

6    subject vessel was under the full control and direction of the United States government.

7          6.    28 U.S.C. § 1442(a)(1) provides:

8          A civil action or criminal prosecution commenced in a State court against any of the following

9    may be removed by them to the district court of the United States for the district and division

10    embracing the place wherein it is pending:

11        (1) The United States or any agency thereof or any officer (or any person acting under
    that officer) of the United States or of any agency thereof, sued in an official or

12        individual capacity for any act under color of such office or on account of any right,
    title or authority claimed under any Act of Congress for the apprehension or

13        punishment of criminals or the collection of the revenue.

14          The basis for the removal of this action is that it involves a person – TODD – that acted under

15    the authority of officers of the United States of America, or any agency thereof, including the U.S.

16    Navy and the Secretary of the Navy, within the meaning of 28 U.S.C. §1442(a)(1).  (*Mesa v.*

17    *California*, 489 U.S. 121, 124-125; 109 S.Ct. 959 (1989); *Pack v. AC&S, Inc., et al.*, 838 F.Supp.

18    1099, 1101 (D. Md. 1993).)

19          7.    In *Fung v. Abex Corp., et al.*, 816 F.Supp. 569 (N.D. Cal. 1993), the Court addressed

20    the propriety of the removal of a case involving the alleged exposure to asbestos while aboard

21    submarines manufactured by General Dynamics.  In denying Plaintiffs' motion to remand, the Court

22    stated that, to satisfy removal under 28 U.S.C. §1442(a), General Dynamics must show that, in

23    manufacturing submarines, it "(1) acted under the direction of a federal officer, (2) raised a federal

24    defense to plaintiffs' claims, and (3) demonstrated a causal nexus between plaintiffs' claims and the

25    acts it performed under color of federal office." (Id. at 571-572.)

26          8.    In *Issacson v. Dow Chemical Company*, 304 F.Supp.2d 442 (E.D.N.Y. 2004), the

27    sufficiency of the federal officer removal statute to deny a motion to remand was examined.  The

28    federal officer removal statute expands the scope of federal jurisdiction, overcoming the "well pleaded

1   complaint" to allow removal if three elements are satisfied. (*Id.* at 446.)  First, TODD must

2   demonstrate that it is a person within the meaning of the statute.  Second, TODD must establish that

3   the suit is under color of federal office, that is, there is a causal connection between the plaintiff's

4   claims and TODD's asserted authority. Third,  TODD must raise a colorable federal defense to the

5   plaintiffs' claims. (*Id.*)

6        9.    The *Issacson* court discussed that a corporation is included in the definition of

7   "person" in this statute. (*Id.*)  The second prong of *Issacson* calling for a causal connection between

8   TODD's actions under the authority of a federal officer and the plaintiffs' state court claims requires

9   a substantial degree of direct and detailed federal control over the TODD's work. (*Id.* at 447.)  What

10   constitutes sufficient federal control is often central to a court's decision to uphold removal or remand

11   a case.  Several courts have upheld removal because defendants were sued as a result of building

12   products pursuant to military specifications. (See *Crocker v. Borden*, 862 F.Supp 132 (E.D.La 1994)

13   (holding that removal was proper for Westinghouse because its marine turbines were manufactured

14   pursuant to Navy specifications; see also, *Pack v. AC and S, Inc.*, 838 F.Supp. 1099 (D.Md. 1993)

15   (holding that removal was proper for Westinghouse because the government had extensive control

16   over the manufacture of turbines, even specifying the type of asbestos cloth).)

17        10.    The *Issacson* Court concluded that the government-ordered specifications differed

18   from the specifications for the defendants' commercial application of the product. (*Issacson*, *supra*

19   at 450.)  In addition, the method of warning and application was completely in the government's

20   hands. (*Id.*)  Finally, the government had full knowledge of the dioxin "problem" inherent in the

21   production of Agent Orange. (*Id.*) These factors demonstrated the control with which the government

22   operated.

23        11.    This analysis also applies in "failure to warn" cases where "there is evidence that

24   the government was involved in the decision to give, or not to give a warning." (*Kerstetter v. Pacific

25   Scientific Co.*, 210 F.3d 431, 438 (5th Cir.), cert denied, 531 U.S. 919 (2000). The Court of Appeals

26   for the Fifth Circuit has made it clear that the government contractor defense is available in "failure

27   to warn" claims where the evidence shows the lack of a warning reflect governmental direction or

28   control rather than the unfettered discretion of the product's manufacturer, and applies wherever: 1)

---

the government approved or authorized warnings which the plaintiff contends were inadequate or incomplete; 2) the warnings provided by the manufacturer conformed to the warnings as approved or authorized by the government; and 3) the manufacturer warned the government as to any product hazards known by the manufacturer, but unknown to the government. (*Id.*)

12.    As stressed in *Kerstetter*, "[t]he government need not prepare the specifications to be considered to have approved them." (*Id.* at 435.) The only material issue is whether the designs and specifications were subjected to "substantial review" rather than a mere "rubber stamp" approval. (*Id.*) In this regard, "[t]he specifications need not address the specific defect alleged; the government need only evaluate the design feature in question." (*Id.*) Once again, applying these general principles to "failure to warn" claims, the fact that government specifications or regulations did not specifically preclude the exact warning desired by Plaintiffs does not take a "failure to warn" claim outside the scope of the government contractor defense so long as the government was involved generally as to the issue of product warnings (or specifically approved the warning provided by the contractor) and was generally aware of the hazard in question. (*Id.* at 438.) Stated another way, "[i]nadequacy [of a warning] is not an issue when it is the government's warning in the first place." (*Id.*)

13.    Here, TODD was involved in the construction, repair, overhaul and maintenance of vessels for the United States of America and the U.S. Navy. For the purposes of this removal, TODD acknowledges having repaired at its various shipyard facilities, the USS CARTER HALL (LSD -3) for the United States of America and the U.S. Navy. However, such repair was necessarily performed pursuant to contracts and specifications executed by an officer of the United States of America and the U.S. Navy. This case is substantially similar to *Issacson*, as during the repair and maintenance of vessels for the U.S. Navy, TODD acted under the direction of a federal officer when it allegedly repaired the vessel aboard which Decedent worked, within the precise and exacting specifications promulgated by the United States of America and the U.S. Navy.

14.    If the USS CARTER HALL (LSD-3) was built and/or repaired by TODD, it was built and/or repaired by TODD for the United States of America and the U.S. Navy, pursuant to (a) contracts that mandated adherence to comprehensive and detailed  United States of America and the U.S. Navy-created specifications regarding, among other things, the use of asbestos-containing

---

1   products, as well as (b) repair oversight by on-site United States of America and the U.S. Navy

2   representatives. Under the terms of its contracts with the United States of America and the U.S. Navy,

3   TODD's construction, conversion or repair of vessels was necessarily performed under the authority

4   and control of an officer of the United States of America and the U.S. Navy. Thus, during all phases

5   of TODD's repair of the USS CARTER HALL, pursuant to United States of America and the U.S.

6   Navy contracts and specifications, TODD performed its work under the control and supervision of

7   officers of the United States of America and the U.S. Navy. TODD repaired the subject vessel under

8   the direct supervision, control, order and directives of a federal officer acting under color of federal

9   office.

10      15.     Moreover, TODD can and will assert a federal defense to this action: its work was

11  performed pursuant to contract with, and under the supervision of, the United States government, and

12  any recovery by Plaintiffs are barred by consequence of the judicially recognized doctrine of immunity

13  conferred upon that contractual relationship, and any occurrences arising therefrom. (*Boyle v. United*

14  *Technologies Corp.*, 487 U.S. 500, 509-511; 108 S.Ct. 2510 (1988); *Niemann v. McDonnell Douglas*

15  *Corp.*, 721 F.Supp. 1019, 1021-1023 (S.D.Ill. 1989).)

16      16.     TODD is entitled to federal officer removal under 28 U.S.C. § 1442(a) based upon the

17  federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction*

18  *Co.*, 309 U.S. 18 (1940), *Boyle v. United Technologies*, 487 U.S. 500 (1988), and *Emory v. McDonnell*

19  *Douglas Corp.*, 148 F.3d 347 (4th Cir. 1998). *Yearsley*, and its progeny, established that a government

20  contractor, performing at the direction and authorization of a government officer, is immune from suit

21  based upon performance of the contract in carrying out a government function. The *Yearsley* doctrine

22  is satisfied here, because the subject vessels at issue were constructed, repaired and/or overhauled

23  pursuant to validly conferred authority, and TODD's conduct was within the bounds of that authority.

24      17.     Finally, TODD acted under color of a federal officer or agency in its construction,

25  conversion or repair of U.S. Navy vessels, aboard which Decedent allegedly worked and where he was

26  allegedly exposed to asbestos-containing materials. Therefore, removal of this civil action pursuant

27  to 28 U.S.C. §1442(a)(1) is proper. (*Williams v. Brooks*, 945 F.2d 1322, 1325 fn.2. (5th Cir. 1991).)

28  ///

1      18.     Should Plaintiffs file a Motion to Remand this case, TODD respectfully requests the

2   opportunity to respond more fully in writing, including the submission of Affidavits and authorities.

3      19.     Since TODD was acting under an officer of the United States of America and the U.S.

4   Navy, pursuant to 28 U.S.C. §1442(a)(1), all defendants are not required to join in this Notice of

5   Removal. (See, e.g., *Ely Mines, Inc. v. Hartford Accident & Indemnity Co.*, 644 F.2d 1310, 1315 (9th

6   Cir. 1981).)

7      20.     TODD has not filed an Answer in the above-entitled matter.

8      21.     Since the Complaint was filed on February 10, 2016, and TODD was mail-served on

9   February 22, 2016, TODD is filing this Notice of Joinder of Removal within thirty (30) days from the

10  date it first learned of a basis upon which to remove this action, as required by 28 U.S.C. Section

11  1446(b). The Complaint comprises the first pleading, motion, order or other paper from which TODD

12  could ascertain that Plaintiffs' action should be removed to this Court by TODD.

13     22.     Written notice of the filing of this Notice of Removal will be given to Plaintiffs and the

14  other defendants, who have appeared in the underlying State action.

15          WHEREFORE, TODD hereby notices its removal of this action to this Court.

16

17  DATED:  March 11, 2016                          YARON & ASSOCIATES

18

19                                          By: _____
                                                GEORGE D. YARON
20                                              D. DAVID STEELE
                                                Attorneys for TODD
21                                              PUGET SOUND COMMERCE CENTER,
                                                INC., formerly known as TODD
22                                              SHIPYARDS CORPORATION

23

24

25

26

27

28

# Exhibit A

1   ALAN R. BRAYTON, ESQ., S.B. #73685
    DAVID R. DONADIO, ESQ., S.B. #154436
2   DDonadio@braytonlaw.com
    JAMES P. NEVIN, ESQ., S.B. #220816
3   NANCY T. WILLIAMS, ESQ., S.B. #201095
    BRAYTON❖PURCELL LLP
4   Attorneys at Law
    222 Rush Landing Road
5   P.O. Box 6169
    Novato, California  94948-6169
6   (415) 898-1555

7   Attorneys for Plaintiffs

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

FEB. 1 0 2016

CLERK OF THE COURT
BY: _____
BOWMAN LIU
Deputy Clerk

8            SUPERIOR COURT OF CALIFORNIA

9               COUNTY OF SAN FRANCISCO

10  MARCELLA JOHNSON, as Successor-in-          )   ASBESTOS
    Interest to and as Wrongful Death Heir of    )   No.  C G C - 1 6 - 2 7 6 4 9 3
11  RICHARD JOHNSON, Deceased; and              )
    DEVIN JOHNSON, TIFFANEY                      )   COMPLAINT FOR SURVIVAL,
12  JOHNSON, as Wrongful Death Heirs of         )   WRONGFUL DEATH - ASBESTOS
    RICHARD JOHNSON, Deceased,                  )
13                                              )   (Pursuant to Case Management Order, Filed
         Plaintiffs,                            )   June 29, 2012)
14                                              )
    vs.                                         )
15                                              )   Index of Causes of Action:
    GEORGIA-PACIFIC LLC (FKA GEORGIA-           )
16    PACIFIC CORPORATION);                     )   1.  Negligence I - Survival
    ASSOCIATED INSULATION OF                    )   2.  Products Liability - Survival
17    CALIFORNIA;                               )   3.  Negligence I - Wrongful Death
    PUGET SOUND COMMERCE CENTER,                )   4.  Products Liability - Wrongful Death
18    INC. (FKA TODD SHIPYARDS                  )   5.  Negligence II - Survival
      CORPORATION);                             )   6.  Negligence II - Wrongful Death
19  and DOES 1 through 800, inclusive, as       )
    required by California law on joint and several )
20  liability pursuant to California Civil Code § )
    1431.2 enacted by the People of the State of )
21  California,                                 )
                                                )
22       Defendants.                            )

23

24              FIRST CAUSE OF ACTION
                 (Negligence I - Survival)
25

26      PLAINTIFF, MARCELLA JOHNSON, AS SUCCESSOR-IN-INTEREST TO

27  DECEDENT RICHARD JOHNSON, COMPLAINS OF DEFENDANTS HEREINBELOW

28  NAMED IN PARAGRAPH 4, DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1  OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE I (SURVIVAL),

2  PURSUANT TO CIVIL CODE § 1714, BAJI 3.00, 3.10, 3.11, 3.12, 3.76, 3.77, 3.78, 9.19, 9.20,

3  9.21, AND CACI 400, 401, 431, 435, 1220, 1221, 1222, 1223, AND ALLEGES:

4        1.       RICHARD JOHNSON died on November 22, 2015.  Plaintiff brings this action

5  pursuant to Section 377.30 of the Code of Civil Procedure.

6        2.       The true names and capacities, whether individual, corporate, associate,

7  governmental or otherwise, of defendants DOES 1-800, inclusive, are unknown to plaintiff at this

8  time, who therefore sues said defendants by such fictitious names.  When the true names and

9  capacities of said defendants have been ascertained, plaintiff will amend this complaint

10 accordingly.  Plaintiff is informed and believes, and thereon alleges, that each defendant

11 designated herein as a DOE is responsible, negligently or in some other actionable manner, for

12 the events and happenings hereinafter referred to, and caused injuries and damages proximately

13 thereby to the decedent, as hereinafter alleged.

14       3.       At all times herein mentioned, each of the defendants was the agent, servant,

15 employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each

16 defendant was acting in the full course and scope of said agency, service, employment and/or

17 joint venture.

18       4.       Plaintiff is informed and believes, and thereon alleges, that at all times herein

19 mentioned, defendants GEORGIA-PACIFIC LLC (FKA GEORGIA-PACIFIC

20 CORPORATION); ASSOCIATED INSULATION OF CALIFORNIA; and DOES 1 through

21 300, inclusive, were and are individuals, or corporations, partnerships, and/or unincorporated

22 associations, and/or other business entities organized and existing under and by virtue of the laws

23 of the State of California, or the laws of some other state or foreign jurisdiction, and that said

24 defendants, and each of them, were and are authorized to do and are doing business in the State

25 of California, and that said defendants have regularly conducted business in the County of San

26 Francisco, State of California.

27       5.       At all times herein mentioned, each of the named defendants and DOES 1 through

28 300 was the successor, successor in business, successor in product line or a portion thereof,

1   assign, predecessor, predecessor in business, predecessor in product line or a portion thereof,

2   parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in

3   an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling,

4   assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting,

5   servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding,

6   manufacturing for others, packaging and advertising a certain substance, the generic name of

7   which is asbestos, and other products containing said substance.  Said entities shall hereinafter

8   collectively be called "alternate entities."  Each of the herein named defendants is liable for the

9   tortious conduct of each successor, successor in business, successor in product line or a portion

10  thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or

11  partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded,

12  that researched, studied, tested, manufactured, fabricated, designed, modified, labeled,

13  assembled, distributed, promoted, leased, bought, offered for sale, recommended for use,

14  supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed,

15  warranted, evaluated, rebranded, manufactured for others and advertised a certain substance, the

16  generic name of which is asbestos, and other products containing said substance.  The following

17  defendants, and each of them, are liable for the acts of each and every "alternate entity," and each

18  of them, in that there has been a virtual destruction of plaintiff's remedy against each such

19  "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a

20  portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of

21  them, caused the destruction of plaintiff's remedy against each such "alternate entity"; each such

22  defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and

23  that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

24  **DEFENDANT**                                    **ALTERNATE ENTITY**

25  GEORGIA-PACIFIC LLC (FKA                  BESTWALL GYPSUM COMPANY
        GEORGIA-PACIFIC CORPORATION)          CALIFORNIA WESTERN RAILROAD
26                                                                      COLUMBIA VALLEY LUMBER COMPANY

27  **DEFENDANT**                                    **ALTERNATE ENTITY**

28  ASSOCIATED INSULATION                      OSCAR E. ERICKSON, INC.
        OF CALIFORNIA

1      6.    At all times herein mentioned, defendants, their "alternate entities," and each of

2 them, were and are engaged in the business of researching, manufacturing, fabricating, designing,

3 modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying,

4 selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting,

5 representing, servicing, installing, contracting for installation, repairing, marketing, warranting,

6 rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

7 directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other

8 products containing asbestos.

9      7.    At all times herein mentioned, defendants, their "alternate entities," and each of

10 them, were and are engaged in the business of mining, processing, sorting, researching,

11 manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing,

12 buying, offering for sale, supplying, selling, inspecting, servicing, installing, removing,

13 manipulating, testing, disturbing, contracting for installation, repairing, marketing, warranting,

14 rebranding, manufacturing for others, packaging and/or advertising a certain substance, the

15 generic name of which is asbestos and other products containing said substance.

16      8.    There is general agreement among scientists, health care providers, physicians,

17 and health and science related agencies and organizations, including but not limited to, the World

18 Health Organization, International Agency for Research on Cancer, American Cancer Society,

19 National Cancer Institute, National Toxicology Program, Environmental Protection Agency,

20 American Thoracic Society, Occupational Safety and Health Administration, Consumer Products

21 Safety Commission, and the Unites States Congress that exposure to any asbestos type can

22 increase the risk of disease, including but not limited to sub-clinical pleural, lung, and other

23 organ scarring, cancer, mesothelioma, and non-malignant lung and pleural disorders. Evaluation

24 of all available human data provides no evidence for a "safe" level of asbestos exposure below

25 which risk of clinical disease is not increased.  The mainstream scientific and medical

26 community is in consensus that exposure to asbestos at current regulatory levels results in excess

27 incidence of mesothelioma and that any occupational or para-occupational exposure to asbestos -

28 even that described as low-level or brief in duration must be regarded as causal in an individual

1   with clinical mesothelioma. "The victim ultimately suffocates from the tumor." Hernandez v.

2   Amcord, Inc., 215 Cal.App.4th 659, 664. A rigorous review of the epidemiologic evidence

3   confirms that all types of asbestos fiber are causally implicated in the development of various

4   diseases and premature death. Numerous well respected international and national scientific

5   organizations, through an impartial and rigorous process of deliberation and evaluation, have

6   concluded that all forms of asbestos are capable of inducing mesothelioma, lung cancer,

7   asbestosis and other diseases. These conclusions are based on the full body of evidence,

8   including the epidemiology, toxicology, industrial hygiene, biology, pathology, and other related

9   literature published to the time of the respective evaluations. Since the 1960s, the scientific

10   evidence has become overwhelming that occupational and environmental exposure to asbestos

11   can cause asbestosis, lung cancer, and mesothelioma. A large number of studies have reported an

12   excess of mesothelioma and lung cancer among  workers who were predominantly exposed to

13   chrysotile asbestos (Kanarek, 2011). For example, excess mortality from lung cancer and

14   mesothelioma has been reported among miners and millers in Quebec (Liddell, et al., 1997),

15   among textile workers in South Carolina (Hein, et al., 2007) and North Carolina (Loomis, et al.,

16   2009), Chinese chrysotile production workers (Wang, et al., 2012), and in Italian miners (Pira, et

17   al., 2009) exposed primarily to chrysotile asbestos.

18        9.    A basic tenet of California law is that everyone is required to use ordinary care in

19   their activities so as to regard the safety of others and prevent injury to others from their conduct

20   or omissions. (Civ. Code, § 1714, subd. (a); Pedeferri v. Seidner Enterprises (2013) 216

21   Cal.App.4th 359, 365; Cabral v. Ralphs (2011) 51 Cal.4th 764; Merrill v. Navegar, Inc. (2002)

22   26 Cal.4th 465; Hilyar v. Union Ice Co. (1955) 45 Cal.2d 30, 36.)

23        10.   At all times herein mentioned, defendants, their "alternate entities" and each of

24   them, singularly and jointly, failed to use ordinary care to prevent harm to themselves or to

25   others, negligently acted or failed to act, negligently did something that a reasonably careful

26   person would not do in the same situation, negligently failed to do something that a reasonably

27   careful person would do in the same situation, negligently and carelessly researched or failed to

28   research, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to

1    abate, warned or failed to warn of the health hazards, labeled or failed to label, assembled,

2    distributed, leased, bought, offered for sale, supplied, sold, inspected or failed to inspect,

3    serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded,

4    manufactured for others, packaged and advertised, removed, disturbed, failed to recall, and/or

5    failed to retrofit, a certain substance, the generic name of which is asbestos and other products

6    containing said substance, in that said substance proximately caused personal injuries to users,

7    consumers, workers, bystanders, family members, and others, including the plaintiff herein

8    (hereinafter collectively called "exposed persons"), while being used in a manner that was

9    reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by

10   "exposed persons."

11        11.    Defendants, their "alternate entities," and each of them, had a duty to exercise due

12   care in the pursuance of the activities mentioned above and defendants, and each of them,

13   breached said duty of due care.

14        12.    Defendants, their "alternate entities" and each of them, knew, or should have

15   known, and intended that the aforementioned asbestos and products containing asbestos, would

16   be transported by truck, rail, ship, and other common carriers, that in the shipping process the

17   products would break, crumble, or be otherwise damaged; and/or that such products would be

18   used for insulation, construction, drywalling, plastering, fireproofing, soundproofing, automotive,

19   aircraft and/or other applications, including, but not limited to mixing, sawing, chipping,

20   hammering, scraping, sanding, drilling, breaking, removal, "rip-out," clean up, and other

21   manipulation, resulting in the indiscriminate or other release of airborne asbestos fibers, and that

22   through such foreseeable use and/or handling by "exposed persons," including decedent herein

23   would use or be in proximity to and exposed to said asbestos fibers, which contaminated the

24   packaging, products, environment, and clothing of persons working in proximity to said

25   products, directly or through reentrainment.

26        13.    Defendants, their "alternate entities," and each of them, knew, or should have

27   known, and intended that the afore-mentioned asbestos and asbestos-containing products would

28   be used, manipulated, or handled as specified in Exhibit A, which is attached hereto and

1   incorporated by reference herein, resulting in the release of airborne asbestos fibers, and that

2   through such foreseeable use and/or handling "exposed persons," including decedent would be in

3   proximity to and exposed to said asbestos fibers.

4        14.    Decedent herein, has used, handled or been otherwise exposed to asbestos and

5   asbestos-containing products referred to herein in a manner that was reasonably foreseeable and

6   from the intended use of the product. Decedent's exposure to asbestos and asbestos-containing

7   products occurred at various locations as set forth in Exhibit A, which is attached hereto and

8   incorporated by reference herein.

9        15.    As a direct and proximate result of the conduct or omissions of the defendants,

10  their "alternate entities," and each of them, as aforesaid, decedent's exposure to asbestos and

11  asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the

12  decedent, including, but not limited to breathing difficulties, pleural disease, asbestosis, other

13  lung damage and/or cancer, and the ultimate death of decedent, to wit: Decedent was diagnosed

14  with mesothelioma on or about November 2014 and with asbestos-related pleural disease on or

15  about June 2015, and may have other asbestos-related diagnosis to be determined.

16       16.    Plaintiff is informed and believes, and thereon alleges, that progressive lung

17  disease, cancer and other serious diseases and physical injury are caused by inhalation of asbestos

18  fibers without contemporaneous perceptible trauma and that said disease results from exposure to

19  asbestos and asbestos-containing products over a period of time.

20       17.    Decedent suffered, and subsequently died on November 22, 2015, from

21  mesothelioma, a condition related to exposure to asbestos and asbestos-containing products.

22  Decedent was not aware at the time of exposure that asbestos or asbestos-containing products

23  presented any risk of injury and/or disease.

24       18.    As a direct and proximate result of the aforesaid conduct of defendants, their

25  "alternate entities," and each of them, decedent suffered permanent injuries to his person, body,

26  and health, including, but not limited to, mesothelioma, and other lung damage, and ultimately

27  death, from the effect of exposure to asbestos fibers, all to his general damage in a sum in excess

28  ///

1    of the jurisdictional limits of a limited civil case.  This action is an Unlimited Civil Case as

2    defined in Code of Civil Procedure sec. 88.

3         19.    As a direct and proximate result of the aforesaid conduct of the defendants, their

4    "alternate entities," and each of them, decedent incurred liability for the reasonable value of

5    medical care provided by decedent's family members measured by, inter alia, the costs associated

6    with the hiring a registered nurse, home hospice, or other service provider, the true and exact

7    amount thereof being unknown to plaintiff at this time, and plaintiff prays leave to amend this

8    complaint accordingly when the true and exact cost thereof is ascertained.

9         20.    As a further direct and proximate result of the said conduct of the defendants,

10   their "alternate entities," and each of them, decedent incurred, loss of income, benefits,

11   entitlements, wages, profits, and commissions, a diminishment of earning potential, and other

12   pecuniary losses, the full nature and extent of which are not yet known to plaintiff; and leave is

13   requested to amend this complaint to conform to proof at the time of trial.

14        21.    As a further direct and proximate result of the said conduct of the defendants,

15   their "alternate entities," and each of them, decedent died on November 22, 2015.

16        22.    The following defendants, their "alternate entities," and each of them, and their

17   officers, directors and managing agents participated in, authorized, expressly and impliedly

18   ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

19   The following defendants, their "alternate entities," and each of them, are liable for the

20   fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each

21   defendant's officers, directors and managing agents participated in, authorized, expressly and

22   impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their

23   "alternate entities" as set forth herein.  The herein-described conduct of said defendants listed in

24   this paragraph below, their "alternate entities," and each of them, was and is willful, malicious,

25   fraudulent, outrageous and in conscious disregard and indifference to the safety and health of

26   "exposed persons."  Plaintiff, for the sake of example and by way of punishing said defendants,

27   seeks punitive damages according to proof against the following defendant GEORGIA-PACIFIC

28   LLC (FKA GEORGIA-PACIFIC CORPORATION).

1    WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and

2  each of them, as hereinafter set forth.

3                    SECOND CAUSE OF ACTION
                     (Products Liability - Survival)
4

5    AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF

6  ACTION FOR PRODUCTS LIABILITY (SURVIVAL), PLAINTIFF MARCELLA JOHNSON,

7  AS SUCCESSOR-IN-INTEREST TO DECEDENT RICHARD JOHNSON, COMPLAINS OF

8  DEFENDANTS NAMED IN PARAGRAPH 4 HEREINABOVE, THEIR "ALTERNATE

9  ENTITIES," AND EACH OF THEM, PURSUANT TO BAJI 3.76, 3.77. 3.78, 9.00, 9.00.5,

10  9.00.7, AND CACI 431, 435, 1200, 1203, 1205, AND 1223, AND ALLEGES AS FOLLOWS:

11    23.    Plaintiff incorporates herein by reference, as though fully set forth herein, the

12  allegations and facts contained in all of the forgoing paragraphs.

13    24.    Defendants, their "alternate entities," and each of them, defectively designed

14  asbestos and asbestos-containing products and failed to adequately  warn of potential safety

15  hazards of asbestos and asbestos-containing products.

16    25.    Such asbestos and asbestos-containing products did not perform as safely as an

17  ordinary consumer would expect when used or misused in an intended or reasonably foreseeable

18  way.

19    26.    Such asbestos and asbestos-containing products when used or misused in an

20  intended or reasonably foreseeable way had potential risks that were known or knowable in light

21  of the scientific and medical knowledge that was generally accepted in the scientific community

22  at the time of manufacture, distribution, or sale, and defendants failed to adequately warn of

23  those potential risks.

24    27.    Defendants, their "alternate entities," and each of them, knew and intended that

25  the above-referenced asbestos and asbestos-containing products would be used by the purchaser

26  or user without inspection for defects therein or in any of their component parts and without

27  knowledge of the hazards involved in such use.

28  ///

28.     Said asbestos and asbestos-containing products were defective under California Consumer Safety Law and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death.  The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them.  Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer and death to "exposed persons," including decedent herein while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use. Moreover, said products failed to be designed, as required by California law, to account for foreseeable risks, even if they arise from the conduct of others.  Collins v. Navistar, Inc. (2013) 214 Cal.App.4th 1486, 1511.

29.     "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons."  Said defendants, their "alternate entities," and each of them, further failed to adequately warn of the risks to which defendant and others similarly situated were exposed.

30.     In researching or failing to research, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling  or failing to label, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising, disturbing, removing, failing to recall, failing to retrofit asbestos and asbestos-containing products, defendants, their "alternate entities," and each of them, did so with reckless or conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, related to the intended use of said products by defendants, which intended use created hazardous circumstance and situation, in that said defendants, their "alternate entities," and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung disabilities and cancer.  Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their "alternate entities," and each of them,

1  and which knowledge was obtained by said defendants, their "alternate entities," and each of

2  them, on or before 1930, and thereafter.

3       31.    On or before 1930, and thereafter, said defendants, their "alternate entities" and

4  each of them, were aware that members of the general public and other "exposed persons," who

5  would come in contact with their asbestos and asbestos-containing products, had no knowledge

6  or information indicating that asbestos or asbestos-containing products could cause injury, and

7  said defendants, their "alternate entities," and each of them, knew that members of the general

8  public and other "exposed persons," who came in contact with asbestos and asbestos-containing

9  products, would assume, and in fact did assume, that exposure to asbestos and asbestos-

10  containing products was safe, when in fact said products and exposure thereto was extremely

11  hazardous to health and human life.

12       32.    With said knowledge, said defendants, their "alternate entities," and each of them,

13  opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy,

14  offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market,

15  warrant, rebrand, manufacture for others, package and advertise, remove, and disturb said

16  asbestos and asbestos- containing products without attempting to protect "exposed persons" from

17  or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos

18  and asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or

19  warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos

20  and asbestos-containing products, defendants, their "alternate entities," and each of them,

21  intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

22  and suppressed said knowledge from "exposed persons" and members of the general public, thus

23  impliedly representing to "exposed persons" and members of the general public that asbestos and

24  asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their

25  "alternate entities," and each of them, engaged in this conduct and made these implied

26  representations with the knowledge of the falsity of said implied representations.

27       33.    The above-referenced conduct of said defendants, their "alternate entities," and

28  each of them, was motivated by the financial interest of said defendants, their "alternate entities,"

K:\Injured\12(343\PLD\cmp wdsrv2.wpd
11
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

1 and each of them, in the continuing, uninterrupted research, design, modification, manufacture,
2 fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale,
3 inspection, installation, contracting for installation, repair, marketing, warranting, rebranding,
4 manufacturing for others, packaging and advertising, disturbing, removing of asbestos and
5 asbestos-containing products.  In pursuance of said financial motivation, said defendants, their
6 "alternate entities," and each of them, consciously disregarded the safety of "exposed persons"
7 and in fact were consciously willing and intended to permit asbestos and asbestos-containing
8 products to cause injury to "exposed persons" and induced persons to work with and be exposed
9 thereto, including defendant.

10      34.    Plaintiff alleges that the aforementioned defendants, their "alternate entities," and
11 each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for
12 their intended use but that their asbestos and asbestos-containing products, created an
13 unreasonable risk of bodily harm to exposed persons.

14      35.    Plaintiff further alleges RICHARD JOHNSON's injuries and death were a result
15 of cumulative exposure to asbestos and various asbestos-containing products manufactured,
16 fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled,
17 distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed,
18 contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others,
19 packaged and advertised by the aforementioned defendants, their "alternate entities," and each of
20 them, and that plaintiff cannot identify precisely which asbestos or asbestos-containing products
21 caused the injuries complained of herein.

22      36.    Plaintiff relied upon defendants', their "alternate entities'," and each of their
23 representations, lack of warnings, and implied warranties of fitness of asbestos and their
24 asbestos-containing products.  As a direct, foreseeable and proximate result thereof, decedent
25 suffered injury and death as alleged herein.

26      37.   As a direct and proximate result of the actions and conduct outlined herein,
27 decedent suffered the injuries, death and damages previously alleged.
28 ///

K:\Injured\12\343\PLD\cmp wdsrv2.wpd

38.     The following defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. The following defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.  The herein-described conduct of said defendants listed in this paragraph below, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons."  Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof against the following defendant GEORGIA-PACIFIC LLC (FKA GEORGIA-PACIFIC CORPORATION).

WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
#### (Negligence I - Wrongful Death)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION, PLAINTIFFS MARCELLA JOHNSON, DEVIN JOHNSON, TIFFANEY JOHNSON, COMPLAIN OF DEFENDANTS HEREINABOVE NAMED IN PARAGRAPH 4, DOES 1-300, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE I (WRONGFUL DEATH), PURSUANT TO CIVIL CODE § 1714, BAJI 3.00, 3.10, 3.11, 3.12, 3.76, 3.77, 3.78, 9.19, 9.20, 9.21, AND CACI 400, 401, 431, 435, 1220, 1221, 1222, 1223, AND ALLEGE:

39.     Plaintiffs incorporate herein by reference, as though fully set forth herein, the allegations and facts contained in all of the forgoing paragraphs of the First Cause of Action.

40.     Plaintiffs bring this action as specified in Section 377.60 of the Code of Civil Procedure.

41.     The heirs at law of the decedent and their relationship to the decedent are as follows:

| NAME | AGE | RELATIONSHIP TO DECEDENT |
|------|-----|--------------------------|
| MARCELLA JOHNSON | 70 Years | Spouse |
| DEVIN JOHNSON | Over 18 | Son |
| TIFFANEY JOHNSON | Over 18 | Daughter |

42.     The individuals set forth as heirs constitute all of the surviving heirs of decedent pursuant to Section 377.60 of the California Code of Civil Procedure.

43.     Defendants DOES 291-300 are, in fact, heirs of decedent entitled to recover damages under California Code of Civil Procedure Section 377.60.  Plaintiffs have not at this time ascertained the true names of said defendants and, therefore, name them as nominal defendants pursuant to California Code of Civil Procedure Section 382.  Plaintiffs will seek leave of this court to realign said defendants as plaintiffs at the time of the trial of this action.

44.     As a direct and proximate result of the conduct of the defendants, their "alternate entities," and each of them, as aforesaid, the exposure to asbestos and asbestos-containing products caused decedent to develop diseases from which condition decedent died.  Plaintiffs were unaware that death was caused by asbestos-related disease until within one year of filing complaint.

45.     At all times prior to his death, decedent was a faithful and dutiful spouse to plaintiff MARCELLA JOHNSON and parent to plaintiff children.

46.     As a direct and proximate result of the conduct of defendants, and each of them, and the death of decedent, decedent's heirs have sustained pecuniary loss resulting from the loss of care, society, comfort, attention, services, and support of decedent all to the damage of decedent's heirs.

47.     As a further direct and proximate result of the conduct of defendants, and each of them, and the death of decedent, decedent's heirs have incurred funeral, burial, and medical expenses in an amount currently not ascertained.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as hereinafter set forth.

FOURTH CAUSE OF ACTION
(Products Liability - Wrongful Death)

AS AND FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), PLAINTIFFS MARCELLA JOHNSON, DEVIN JOHNSON, TIFFANEY JOHNSON, COMPLAIN OF DEFENDANTS HEREINABOVE NAMED IN PARAGRAPH 4 HEREINABOVE, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, PURSUANT TO BAJI 3.76, 3.77, 3.78, 9.00, 9.00.5, 9.00.7, AND CACI 431, 435, 1200, 1203, 1205, AND 1223, AND ALLEGE AS FOLLOWS:

48.     Plaintiffs incorporate herein by reference, as though fully set forth herein, the allegations and facts contained in all of the forgoing paragraphs of the Second and Third Causes of Action.

49.     As a direct and proximate result of the conduct of defendants, and each of them, decedent's heirs have sustained the injuries and damages previously alleged.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as hereinafter set forth.

FIFTH CAUSE OF ACTION
(Negligence II - Survival)

AS AND FOR A FURTHER AND FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF, MARCELLA JOHNSON, AS SUCCESSOR-IN-INTEREST TO DECEDENT RICHARD JOHNSON, COMPLAINS OF DEFENDANTS PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION); ASSOCIATED INSULATION OF CALIFORNIA; AND DOES 301 THROUGH 500, FOR NEGLIGENCE II (SURVIVAL), PURSUANT TO CIVIL CODE § 1714, BAJI 3.00, 3.10, 3.11, 3.12, 3.76, 3.77, 3.78, AND CACI 400, 401, 431, 435, AND ALLEGES AS FOLLOWS:

50.     Plaintiff, by this reference, incorporates the allegations and facts contained in all of the forgoing paragraphs of the First and Second Causes of Action.

51.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, these Defendants and DOES 301 through 500, were individuals, or corporations,

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

1  partnerships and/or unincorporated associations organized and existing under and by virtue of the

2  laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

3  said defendants, and each of them, were and are authorized to do and are doing business in the

4  State of California.

5       52.    At all times herein mentioned, each of these Defendants was a successor,

6  successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or

7  partially owned by, or the whole or partial owner of an entity causing certain asbestos- and silica-

8  containing insulation, other building materials, asbestos products and toxic substances to be

9  constructed, installed, maintained, used, replaced, and/or repaired on the respective premises

10  owned, leased, maintained, managed and/or controlled by them.  Said entities shall hereinafter

11  collectively be called "alternate entities." Each of the herein-named defendants is liable for the

12  tortious conduct of each successor, successor-in-business, assign, predecessor-in-business,

13  parent, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the

14  presence as aforesaid of said asbestos- and silica-containing insulation, other asbestos products,

15  and other toxic substances.  The following defendants, and each of them, are liable for the acts of

16  each and every "alternate entity," and each of them, in that there has been a virtual destruction of

17  plaintiff's remedy against each such alternate entity; defendants, and each of them, have acquired

18  the assets, or a portion thereof, of each such alternate entity; defendants, and each of them, have

19  caused the destruction of plaintiff's remedy against each such alternate entity; each such

20  defendant has the ability to assume the risk-spreading role of each such alternate entity, and that

21  each such defendant enjoys the goodwill originally attached to each such alternate entity.

22  DEFENDANT                      ALTERNATE ENTITY

23  PUGET SOUND COMMERCE CENTER, INC. VIGOR SHIPYARDS, INC. ( FKA TODD PACIFIC
     (FKA TODD SHIPYARDS CORPORATION)    SHIPYARDS CORPORATION)

24                                     SEATTLE-TACOMA SHIPBUILDING CORP.
                                      TODD SEATTLE DRY DOCKS, INC.

25

26       53.    At all times mentioned herein, these defendant, and each of them, respectively,

27  owned, leased, maintained, managed, and/or controlled the following premises where decedent

28  RICHARD JOHNSON was present.  The following information provided is preliminary, based

1  on recall over events covering many years and further investigation and discovery may produce

2  more reliable information:

3  PREMISES OWNER
   DEFENDANTS                              LOCATION                    TIME PERIOD

4

5  PUGET SOUND COMMERCE CENTER,            Todd Shipyard, Seattle, WA   3/1963-4/1963
   INC. (FKA TODD SHIPYARDS
   CORPORATION)                            Todd Shipyard, San Pedro, CA  9/1966

6

7  CONTRACTOR
   DEFENDANTS                              LOCATION                    TIME PERIOD

8  ASSOCIATED INSULATION OF                Various                     Various
   CALIFORNIA

9

10      Additionally, decedent might have been present at these defendants or other Defendants'

11  premises at other locations and on other occasions.

12      54.   A basic tenet of California law is that everyone is required to use ordinary care to

13  prevent injury to others from their conduct.  (Civ. Code, § 1714, subd. (a); Pedeferri v. Seidner

14  Enterprises (2013) 216 Cal.App.4th 359, 365.)  This general rule requires a property owner,

15  contractor, or other person  to exercise ordinary care in the management of a premises in order to

16  provide a safe work environment and to avoid exposing persons to an unreasonable risk of harm.

17  (Rowland v. Christian (1968) 69 Cal.2d 108, 112-119; Sprecher v. Adamson Companies (1981)

18  30 Cal.3d 358, 371; Scott v. Chevron U.S.A. (1992) 5 Cal.App.4th 510, 515.; Torres v. Reardon

19  (1992) 3 Cal.App.4th 831, 836-837; Pedeferri v. Seidner Enterprises, 216 Cal.App.4th 359.)

20  Civil Code § 1714 does not limit responsibility for negligence to a certain class of defendants;

21  rather, it provides that "[e]very one is responsible for an injury occasioned to another by [one's]

22  want of ordinary care or skill."  (Safeco Ins. Co. v. Robert S. (2001) 26 Cal.4th 758, 764

23  (emphasis added).)

24          Negligence may be active or passive in character.  It may consist in
            heedlessly doing an improper thing or in heedlessly refraining from

25          doing the proper thing. Whether the circumstances call for activity
            or passivity, one who does not do what he should is equally

26          chargeable with negligence with him who does what he should not.

27  Basler v. Sacramento Gas & Electric Co. (1910) 158 Cal. 514, 518.  Under general negligence

28  principles, everyone is "obligated to exercise due care in his or her own actions so as not to

1  create an unreasonable risk of injury to others, and this legal duty generally is owed to the class

2  of persons who it is reasonably foreseeable may be injured as the result of the actor's conduct."

3  Lugtu v. California Highway Patrol (2001) 26 Cal.4th 703, 716 (emphasis added); Cal. Civ.

4  Code, § 1714; see, generally, Rest.2d Torts, § 281; Prosser & Keeton on Torts (5th ed. 1984)

5  § 31, p. 169; 3 Harper, et al., The Law of Torts (2d ed. 1986) § 18.2, 654-655.

6       55.    Prior to and at said times and places, said defendants, and each of them,

7  respectively, caused certain asbestos- and silica-containing insulation and other asbestos-

8  products, other building materials, products and toxic substances to be constructed, installed,

9  maintained, used, supplied, replaced, repaired, disturbed, swept, and/or vacuumed on each of the

10 aforesaid respective premises, by their own workers and/or by various unqualified or unskilled

11 contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other

12 toxic substances into the ambient air and thereby created a hazardous and unsafe condition to

13 decedent and other persons exposed to said asbestos fibers and toxic substances while present at

14 said premises.

15      56.    At all times mentioned herein, said Defendants, and each of them, failed to use

16 ordinary care to prevent harm to themselves or to others, negligently acted or failed to act,

17 negligently did something that a reasonably careful person would not do in the same situation,

18 negligently failed to do something that a reasonably careful person would do in the same

19 situation.

20      57.    At all times mentioned herein, said Defendants, and each of them, knew or in the

21 exercise of ordinary and reasonable care should have known, that the foregoing conditions and

22 activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm

23 and personal injury to decedent and other workers or persons so exposed while present on each of

24 the aforesaid respective premises.

25      58.    At all times relevant herein, decedent entered said premises and used or occupied

26 each of said respective premises as intended and for each of the respective Defendants' benefit

27 and advantage and at each of the respective Defendants' request and invitation.  In so doing,

28 decedent was exposed to dangerous quantities of asbestos fibers and other toxic substances

K:\Injured\121343\PLD\cmp wdsrv2.wpd

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

1   released into the ambient air by the aforesaid hazardous conditions and activities managed,

2   maintained, initiated, and/or otherwise created, controlled, or caused by said Defendants, and

3   each of them.

4           59.     At all times relevant herein, contractors received copies of the General Industry

5   Safety Orders promulgated pursuant to California Labor Code § 6400 and the California

6   Administrative Code under the Division of Industrial Safety, Department of Industrial Relations,

7   including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81,

8   §§ 4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and

9   other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California

10  Health and Safety Code § 40.200, et seq., when provided materials for the State of California

11  contractor license examination.

12          60.     Decedent at all times was unaware of the hazardous condition or the risk of

13  personal injury created by the aforesaid presence and use of asbestos products and materials and

14  other toxic substances on said premises.

15          61.     At all times mentioned herein, said Defendants, and each of them, remained in

16  control of the premises where decedent was performing his work.

17          62.     At all times mentioned herein, said Defendants, and each of them retained control

18  over safety and other related conditions and circumstances at decedent's job site(s) and

19  affirmatively contributed to and exercised, or failed to exercise, that control in a manner that

20  caused plaintiff's injuries from asbestos-containing products and conduct.

21          63.     At all times mentioned herein, the Defendants owed to decedent RICHARD

22  JOHNSON and others similarly situated a duty to exercise ordinary care in the management of

23  such premises in order to avoid exposing workers such as decedent to an unreasonable risk of

24  harm and to avoid causing injury to said person, and said Defendants breached such duty.

25          64.     At all times mentioned herein, said Defendants, and each of them, knew, or in the

26  exercise of ordinary and reasonable care should have known, that the premises that were in their

27  control would be used without knowledge of, or inspection for, defects or dangerous conditions

28  ///

1    and that the persons present and using said premises would not be aware of the aforesaid

2    hazardous conditions to which they were exposed on the premises.

3         65.    At all times mentioned herein, said Defendants, and each of them, negligently

4    failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to

5    warn decedent of, the existence of the aforesaid dangerous conditions and hazards on said

6    premises.

7         66.    Prior to and at the times and places aforesaid, said Defendants, and each of them,

8    respectively, caused certain asbestos- and silica-containing insulation and other asbestos-

9    products, other building materials, products and toxic substances to be constructed, installed,

10   maintained, used, replaced, disturbed, cleaned up, and/or repaired on each of their aforesaid

11   respective premises, by their own workers and/or by employing various contractors, and caused

12   the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the

13   ambient air and thereby injured decedent.

14        67.    At all times mentioned herein, said Defendants, and each of them:

15           a.  Should have recognized that the work of said contractors would create during

16   the progress of the work, dangerous, hazardous, and unsafe conditions which could or would

17   harm decedent RICHARD JOHNSON and others unless special precautions were taken;

18           b.  Knew or had reason to know, that the contractors it had selected and hired to

19   install, remove, abate or otherwise handle asbestos-containing materials were unfit, unskilled or

20   otherwise unqualified to do so;

21           c.  Failed to use reasonable care to discover whether the contractors it selected and

22   hired to install, remove, abate or otherwise handle asbestos-containing materials were competent

23   or qualified to do so.

24        68.    In part, decedent RICHARD JOHNSON was exposed to dangerous quantities of

25   asbestos fibers and other toxic substances by reason of such contractors' failure to take the

26   necessary precautions.

27   ///

28   ///

69.    The work of contractors on premises controlled by the Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

70.    The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Defendants.  Said negligent conduct includes but is not limited to:

    a.    Failure to warn of asbestos and other toxic dusts;

    b.    Failure to suppress the asbestos-containing or toxic dusts;

    c.    Failure to remove the asbestos-containing and toxic dusts through use of ventilation or appropriate means;

    d.    Failure to provide adequate breathing protection, i.e., approved respirators or masks;

    e.    Failure to inspect and/or test the air;

    f.    Failure to provide medical monitoring.

    g.    Failure to select and hire a careful and competent contractor or subcontractor.

71.    The defendants' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code § 1714, and Labor Code § 6400, et seq., or Health and Safety Code § 40.200, et seq., Cal-OSHA provisions, local air quality regulations, and regulations promulgated thereunder. Civil plaintiffs may use safety regulations non-retroactively to show a standard of care, even though the defendant is not their employer.  Elsner v. Uveges (2004) 34 Cal.4th 915, 935-936; Millard v. Biosources, Inc. (2007) 156 Cal.App.4th 1338, 1348-1352; Tverberg v. Fillner Construction, Inc. (2011) 193 Cal.App.4th 1121, 1130.  Therefore, the Defendants are responsible for any breach of said duties whether by themselves or others.

72.    Prior to and at said times and places, said Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry

1    Safety Orders promulgated pursuant to California Labor Code § 6400 and the California

2    Administrative Code under the Division of Industrial Safety, Department of Industrial Relations,

3    including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81,

4    §§ 4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and

5    other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California

6    Health and Safety Code § 40.200, et seq., which empowers for example the South Coast Area Air

7    Quality Management District to promulgate regulations including but not limited to

8    S.C.A.A.Q.M.D., Rule 1403; and empowers the Bay Area Air Quality Management District

9    (B.A.A.Q.D.) to promulgate regulations including, but not limited to B.A.A.Q.D. Regulation 11,

10   Rules 2 and 14; Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National

11   Emission Standards for Hazardous Air Pollutants, which required said Defendants to provide

12   specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other

13   toxic fumes or substances; and said Defendants failed to provide the required safeguards and

14   precautions, or contractors employed by the Defendants failed to provide the required safeguards

15   and precautions.  Defendants' violations of said codes include but are not limited to:

16         (a)   Failing to comply with statutes and allowing ambient levels of airborne

17   asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

18   statutes;

19         (b)   Failing to segregate work involving the release of asbestos or other toxic

20   dusts;

21         (c)   Failing to suppress dust using prescribed ventilation techniques;

22         (d)   Failing to suppress dust using prescribed "wet down" techniques;

23         (e)   Failing to warn or educate decedent or others regarding asbestos or other

24   toxic substances on the premises;

25         (f)   Failing to provide approved respiratory protection devices;

26         (g)   Failing to ensure "approved" respiratory protection devices were used

27   properly;

28   ///

K:\Injured\121343\PLD\cmp wdsrv2.wpd

22

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

1           (h)     Failing to provide for an on-going health screening program for those

2   exposed to asbestos on the premises;

3           (i)     Failing to provide adequate housekeeping and clean-up of the work place;

4           (j)     Failing to properly warn of the hazards associated with asbestos as

5   required by these statutes;

6           (k)     Failing to properly report renovation and disturbance of asbestos-

7   containing materials, including but not limited to the local air quality management district;

8           (l)     Failing to have an asbestos removal supervisor as required by regulation;

9           (m)     Failing to get approval for renovation as required by statutes;

10          (n)     Failing to maintain records as required by statute.

11          (o)     Failing to exercise ordinary care to avoid injury to others;

12          (p)     Failing to test for asbestos content and/or release;

13          (q)     Failing to retrofit; and

14          (r)     Failing to recall.

15         73.    These Defendants, and each of them, were the "statutory employer" of decedent as

16   defined by the California Labor Code and California case law.

17         74.    Decedent at all times was unaware of the hazardous condition or the risk of

18   personal injury created by defendants' violation of said regulations, ordinances or statutes.

19         75.    At all times mentioned herein, decedent was a member of the class of persons

20   whose safety was intended to be protected by the regulations, statutes or ordinances described in

21   the foregoing paragraphs.

22         76.    At all-times mentioned herein, said Defendants, and each of them, knew, or in the

23   exercise of ordinary and reasonable care should have known, that the premises that were in their

24   control would be used without knowledge of, or inspection for, defects or dangerous conditions,

25   that the persons present and using said premises would not be aware of the aforesaid hazardous

26   conditions to which they were exposed on the premises, and that such persons were unaware of

27   the aforesaid violations of codes, regulations and statutes.

28   ///

1   77.   As a legal consequence of the foregoing, decedent developed an asbestos-related

2   illness, which caused great injury and disability to decedent, and ultimately death, as previously

3   set forth, and plaintiff has suffered damages as herein alleged.

4   WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities,"

5   and each of them, as hereinafter set forth.

6   

SIXTH CAUSE OF ACTION
(Negligence II - Wrongful Death)

7

8   AS AND FOR A SIXTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF

9   ACTION FOR NEGLIGENCE II (WRONGFUL DEATH), PLAINTIFFS MARCELLA

10   JOHNSON, DEVIN JOHNSON, TIFFANEY JOHNSON, COMPLAIN OF DEFENDANTS

11   PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION);

12   ASSOCIATED INSULATION OF CALIFORNIA; AND DOES 301 THROUGH 500, THEIR

13   "ALTERNATE ENTITIES," AND EACH OF THEM, PURSUANT TO CIVIL CODE § 1714,

14   BAJI 3.00, 3.10, 3.11, 3.12, 3.76, 3.77, 3.78, AND CACI 400, 401, 431, 435, AND ALLEGE AS

15   FOLLOWS:

16   78.   Plaintiff incorporates herein by reference, as though fully set forth herein, the

17   allegations and facts contained in all of the forgoing paragraphs of the Third through Fifth

18   Causes of Action.

19   79.   As a direct and proximate result of the conduct of defendants, and each of them,

20   decedent's heirs have sustained the injuries and damages previously alleged.

21   WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as

22   follows:

23   1.   For general damages according to proof;

24   2.   For medical and related expenses according to proof;

25   3.   For loss of earnings according to proof;

26   4.   For funeral expenses according to proof;

27   5.   For loss of support according to proof;

28   6.   For the loss of care, comfort and society;

K:\Injured\121343\PLD\cmp wdsrv2.wpd

24
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

1       7.     For exemplary or punitive damages according to proof against defendant

2  GEORGIA-PACIFIC LLC (FKA GEORGIA-PACIFIC CORPORATION), only;

3       8.     For plaintiffs' costs of suit herein;

4       9.     For damages for fraud according to proof; and

5      10.    For such other and further relief as the Court may deem just and proper, including

6  costs and prejudgment interest as provided in C.C.P. § 998, C.C.P. § 1032, and related provisions

7  of law.

8  Dated: 2/8/16

                             BRAYTON❖PURCELL LLP

9

10                           By: _____

11                               David R. Donadio
                               Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## EXHIBIT A

Decedent's exposure to asbestos and asbestos-containing products occurred at various locations both inside and outside the State of California, including but not limited to:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | Naval Training Center, San Diego, CA | Trainee | 8/27/1962 - 11/7/1962 |
| | Long Beach Naval Station, Long Beach, CA | | 11/22/1962- 12/17/1962 |
| | <u>CARTER HALL</u> (LSD-3) | Boiler Tender | 12/17/1962- 9/22/1966 |
| | Todd Shipyard, Seattle, WA | | 3/1963-4/1963 |
| | Long Beach Naval Station, Long Beach, CA | | 5/1963-8/1963 |
| | Japan; Vietnam; Taiwan; Philippines; Guam; Hong Kong; Hawaii | | 9/1963-4/1964 |
| | Long Beach Naval Station, Long Beach, CA | | 5/1964-7/1964 |
| | Bethlehem Shipyard, San Pedro, CA | | 8/1964-11/1964 |
| | Japan; Vietnam; Taiwan; Philippines; Guam; Hong Kong; Hawaii | | 1965 |
| | Long Beach Naval Shipyard, Long Beach, CA; Todd Shipyard, San Pedro, CA | | 3/1966-6/1966 |
| | Long Beach Naval Station, Long Beach, CA | | 7/1966-8/1966 |
| | Todd Shipyard, San Pedro, CA | | 9/1966 |

///

///

///

EXHIBIT A

1    Decedent's exposure to asbestos and asbestos-containing products caused severe and

2 permanent injury to the decedent, including, but not limited to breathing difficulties and/or other

3 lung injury or damage, and ultimately, death.  Decedent was diagnosed with mesothelioma on or

4 about November 2014 and with asbestos-related pleural disease on or about June 2015, and may

5 have other asbestos-related diagnosis to be determined.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                                                                    EXHIBIT A

**EXHIBIT B**

EXHIBIT B

    Decedent retired from his last place of employment at regular retirement age.  He had therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

EXHIBIT B

# Exhibit B

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| DAVID R. DONADIO, ESQ., STATE BAR NO. 154436<br>BRAYTON✤PURCELL LLP<br>222 Rush Landing Road<br>Novato, California 94948-6169<br>TELEPHONE NO.: (415) 898-1555    FAX NO.: (415) 898-1247<br>ATTORNEY FOR *(NAME):* Plaintiff(s) | ENDORSED<br>F I L E D<br>Superior Court of California<br>County of San Francisco<br><br>FEB. 1 0 2016<br><br>CLERK OF THE COURT<br>BY: BOWMAN LIU<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS:    400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
MARCELLA JOHNSON, et al. vs. GEORGIA-PACIFIC LLC (FKA GEORGIA-PACIFIC CORPORATION), et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☒ Unlimited  ☐ Limited<br>(Amount        (Amount<br>demanded    demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CGC-16-276493 |
| | | JUDGE: |
| | | DEPT.: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☒ Asbestos (04)
☐ Product Liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other Collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental / Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☒ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☒ Large number of separately represented parties     d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel     e. ☐ Coordination and related actions pending in one or more courts
      issues that will be time-consuming to resolve              in other counties, states or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence     f. ☐ Substantial post-judgment judicial supervision

3. Remedies sought (check all that apply): a. ☒ monetary     b. ☐ nonmonetary; declaratory or injunctive relief     c. ☒ punitive

4. Number of causes of action *(specify):* 6

5. This case ☐ is  ☒ is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 2|8|16

David R. Donadio
(TYPE OR PRINT NAME)                              ▶                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet shall be used for statistical purposes only.     Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>LexisNexis® Automated California Judicial Council Forms |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

**CIVIL CASE COVER SHEET**

*LexisNexis® Automated California Judicial Council Forms*

# Exhibit C

## NATIONAL REGISTERED AGENTS, INC
### SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To:   JULIE M. SKIRVIN
      VIGOR INDUSTRIAL LLC
      5555 N Channel Ave Bldg 71         SOP Transmittal #  528695695
      Portland, OR 97217-7672

                                          360-357-6794 - Telephone

Entity Served:   PUGET SOUND COMMERCE CENTER, INC  (Domestic State: DELAWARE)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc or its Affiliate
in the State of WASHINGTON on this 22 day of February, 2016. The following is a summary of the document(s) received:

1.   **Title of Action:** MARCELLA JOHNSON, as Successor-in-Interest to and as Wrongful Death Heir of RICHARD JOHNSON,
     Deceased, et al., Pltfs. vs. GEORGIA-PACIFIC LLC, etc., et al., Dfts. // To: PUGET SOUND COMMERCE
     CENTER, INC., etc.

2.   **Document(s) Served:**   Other: Summons, Instructions, Statement(s), Notice(s), Complaint, Exhibit(s), Stipulation(s), Attachment(s)

3.   **Court of Jurisdiction/Case Number:** San Francisco County - Unlimited Jurisdiction - Superior Court, CA
                                             Case # CGC16276493

4.   **Amount Claimed, if any:**  N/A

5.   **Method of Service:**

     ___ Personally served by:        ___ Process Server        ___ Deputy Sheriff        ___ U. S Marshall

     _X_ Delivered Via:               _X_ Certified Mail         ___ Regular Mail          ___ Facsimile

     ___ Other (Explain):

6.   **Date of Receipt:**  02/22/2016

7.   **Appearance/Answer Date:**  Within 30 days after service

8.   **Received From:**     David R. Donadio          9.  **Federal Express Airbill #** 782441543408
                            Brayton Purcell LLP
                            222 Rush Landing
                            PO Box 6169               10. **Call Made to:** Not required
                            Novato, CA 94948
                            (415)898-1555

11.      **Special Comments:**
SOP Papers with Transmittal, via Fed Ex 2 Day

Image SOP

Email Notification,  JULIE M. SKIRVIN  JULIE.SKIRVIN@VIGORINDUSTRIAL.COM

**NATIONAL REGISTERED AGENTS, INC**                    CopiesTo:

Transmitted by  Michele Rowe

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc for informational purposes only and should not
be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

PRIORITY MAIL
POSTAGE REQUIRED



UNITED STATES POSTAGE
$ 13.20⁰
FEB 18 2016
02 1M
0004285635
MAILED FROM ZIP CODE 94954

**PLEASE**
Sign, Print & Date
WHERE INDICATED ON
CERTIFIED CARD

Brayton ★ Purcell, LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169

To:

National Registered Agents
Puget Sound Commerce Center, Inc.
(fka Todd Shipyards Corporation)
505 Union Ave. SE, #120
Olympia, WA 98501

TO:

CERTIFIED MAIL

7114 7089 2540 0017 6778

PRIORITY MAIL

▪ DATE OF DELIVERY SPECIFIED*
▪ USPS TRACKING™ INCLUDED*
▪ INSURANCE INCLUDED*
▪ PICKUP AVAILABLE
  * Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

PRESS FIRMLY TO SEAL

LM LCD-49 FROM www.lasersub.com
800-639-4900